IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| BALRAJ PAUL, *et al.*, derivatively on behalf of UNDER ARMOUR, INC., | * | |
| | * | |
| *Plaintiffs*, | * | |
| v. | * | Civil Action No. RDB-18-2239 |
| KEVIN A. PLANK, *et al.*, | | **Consolidated with:** |
| | * | Civil Action No. RDB-20-2523 |
| *Defendants*, | | Civil Action No. RDB-20-3390 |
| | * | |
| and | | |
| | * | |
| UNDER ARMOUR, INC., | | |
| | * | |
| *Nominal Defendant.* | | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Pursuant to Rule 42 of the Federal Rules of Civil Procedure, these three cases brought by the Plaintiffs Balraj Paul ("Paul") (No. RDB-18-2239), Dale Olin ("Olin") (No. RDB-20-2523), and Anthony Viskovich ("Viskovich") (No. RDB-20-3390) have been consolidated by Order of this Court, with the *Paul* Complaint designated as the lead case.[1] (ECF No. 41.)[2] All three cases are shareholder derivative actions seeking to enforce a corporate cause of action brought on behalf of the corporate Defendant Under Armour, Inc. ("Under Armour" or the "Company"). (ECF No. 75.) After the Board of Directors of Under Armour (the "Board")

---

[1] *Smith v. Plank*, another related stockholder suit, was dismissed by agreement in March 2023. *See* Order, *Smith v. Plank*, No. RDB-20-2589 (D. Md. Mar. 16, 2023), ECF No. 12.
[2] For clarity, this Court cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.

rejected their claims, Plaintiffs Paul, Olin,[3] Viskovich, Robert Lowinger ("Lowinger"), Oscar Weller ("Weller"), and William Robison ("Robison") (collectively, "Plaintiffs") filed their respective Complaints, which arise with respect to Under Armour's accounting practices during a particular period of time and alleged misrepresentations of the Company's performance. (*Id.*)

The sole basis for federal jurisdiction in the instant action is based upon Count VI of the Plaintiffs' Verified First Amended Shareholder Derivative Complaint, (ECF No. 75 ¶¶ 481–486), which sets forth a contribution claim against Defendant Kevin Plank ("Plank"), Under Armour's founder and controlling shareholder who served as the Company's Chief Executive Officer ("CEO") and Chairman until January 1, 2020. (*Id.* ¶ 37.) Specifically, Count VI asserts a contribution claim against Plank under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Section 21D of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, based on losses suffered by the Company. (*Id.* ¶¶ 481–486.) Counts I–V of the operative Amended Complaint are fiduciary claims under Maryland law, (*id.* ¶¶ 451–480), and the Plaintiffs seek for this Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3). (*Id.* ¶ 26.)

Following two Wall Street Journal articles and a Securities and Exchange Commission investigation—the latter of which the Company agreed to pay a $9 million civil penalty to settle—a series of putative class actions were filed in this District alleging violations of the Exchange Act by Under Armour and its executives. These cases were consolidated under the

---

[3] Plaintiffs in *Olin* did not make demand on the Board before filing suit. *See* Complaint, *Olin v. Plank*, No. RDB-20-2523 (D. Md. Sept. 1, 2020), ECF No. 1 ¶¶ 106–141.

caption *In re Under Armour Securities Litigation* (RDB-17-0388) (the "Securities Action"). The Securities Action remains pending before this Court and is scheduled to proceed to trial on July 15, 2024. Order, *In re Under Armour Sec. Litig.*, No. RDB-17-388 (D. Md. Sept. 14, 2023), ECF No. 295. The basic theory of the Securities Action is that information with respect to declining consumer demand was concealed from the shareholders. *See generally* Consolidated Third Amended Complaint, *In re Under Armour Sec. Litig.*, No. RDB-17-388 (D. Md. Oct. 14, 2020), ECF No. 153.

In the instant matter, the basis of any contribution claim under Count VI in these consolidated cases is that a corporate executive has been found liable for securities fraud under Section 10 of the Exchange Act. Derivative contribution claims, as asserted by Plaintiffs in these cases, arise out of pending parallel securities claims, and are simply not ripe at this time. Plaintiffs' contribution claim in this case is contingent upon a finding of liability in the Securities Action proceeding to trial on July 15, 2024. Accordingly, and for the reasons that follow, the Defendants' Motion to Dismiss Plaintiffs' Verified First Amended Shareholder Derivative Complaint (ECF No. 85) is GRANTED, and the Amended Shareholder Derivative Complaint in these consolidated cases is DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.[4]

---

[4] This Court recognizes that Defendants also raised the issue of standing in the Motion to Dismiss Plaintiffs' Verified First Amended Shareholder Derivative Complaint. (*See* ECF No. 85 at 19–40.) Because this Court finds that Plaintiffs' contribution claim is not ripe and should be dismissed for lack of subject matter jurisdiction, this Court need not reach address the standing issue. The issue of Plaintiffs' standing necessarily involves analysis of the business judgment rule. *See* MD. CODE ANN., CORP. AND ASS'NS § 2-405.1(c), (g). This Court would need to address Plaintiffs' disagreement with the actions by the Board of Directors of Nominal Defendant Under Armour, which would require the Court to address the merit of claims set to be addressed in the Securities Action, which is scheduled to proceed to trial on July 15, 2024.

# BACKGROUND

## I. Background on Parties

Plaintiffs Balraj Paul ("Paul"), Dale Olin ("Olin"), Anthony Viskovich ("Viskovich"), Robert Lowinger ("Lowinger"), Oscar Weller ("Weller"), and William Robison ("Robison") (collectively, "Plaintiffs") are stockholders of Under Armour seeking to litigate corporate claims derivatively on behalf of Under Armour. (ECF No. 75 ¶¶ 30–34.)

Nominal Defendant Under Amour ("Under Armour" or the "Company") is a corporation incorporated under Maryland law with its principal place of business in Baltimore, Maryland. (*Id.* ¶ 35.)

Defendant Kevin Plank ("Plank") is Under Armour's founder and controlling stockholder. (*Id.* ¶ 37.) Plank also served as the Company's CEO and Chairman of the Board until January 1, 2020, when he transitioned to Executive Chairman and Brand Chief. (*Id.*) Defendants Byron K. Adams, Jr. ("Adams"), George W. Bodenheimer ("Bodenheimer"), Douglas E. Coltharp ("Coltharp"), Jerri L. DeVard ("DeVard"), Karen W. Katz ("Katz"), Alvin B. Krongard ("Krongard"), William R. McDermott ("McDermott"), Eric T. Olson ("Olson"), and Harvey L. Sanders ("Sanders") are current or former members of the Board. (*Id.* ¶¶ 38–46.) Defendant Bradley J. Dickerson ("Dickerson") served as CFO from March 2008 to January 2016 and as Chief Operating Officer ("COO") from March 2015 to January 2016. (*Id.* ¶ 47.) Defendant Lawrence P. Molloy ("Molloy") served as the Chief Financial Officer ("CFO") from January 2016 to February 2017. (*Id.* ¶ 48.) Defendant David E. Bergman ("Bergman") is currently serving as CFO and has served as acting or official CFO since February 2017. (*Id.* ¶ 49.)

## II. Factual Background

Under Armour was founded in 1996 and went public in 2005. (*Id.* ¶ 55.) Between Q2 2010[5] and Q3 2016, the Company "reported an unwavering revenue growth rate of 20% or more (on a year-over-year basis)." (*Id.* ¶ 57.) During Q4 2016, "[n]et revenues grew only 12%," and "[n]et revenues in FY 2016 were $4.8 billion, lower than the Company's [projection] of $4.925 billion issued just a few months prior, on October 25, 2016." (*Id.* ¶ 221.)

On July 5, 2017, and after Under Armour issued its Q4 2016 results, Paul sent a demand to the Board requesting that the Board investigate and take action to address Under Armour's allegedly false and misleading disclosures about its financial performance in 2015 and 2016. (*Id.* ¶ 399.) The Board subsequently appointed a review group comprised of Defendants Olson and Bodenheimer to investigate Paul's allegations and make a recommendation to the Board as to how to respond. (*Id.* ¶ 400.) Based on an investigation conducted with the assistance of independent outside counsel—the law firm of Williams & Connolly LLP—Olson and Bodenheimer concluded that the claims in Paul's demand lacked merit and recommended that the Board decline to pursue those claims. (*Id.*) On November 6, 2017, the majority independent and disinterested Board voted to adopt the review group's findings and recommendations. (*Id.*) On December 7, 2017, Paul sent a follow up letter, and the Board reaffirmed its decision. (*Id.* ¶¶ 401–402.)

Also following the issuance of the Company's Q4 2016 results, several putative class actions were filed alleging violations of the Securities Exchange Act of 1936 (the "Exchange

---

[5] Fiscal quarters are referenced in the format of "Q# YYYY," such that the second quarter of 2010 appears as Q2 2010.

Act") by Under Armour and its executives, which were consolidated under the caption *In re Under Armour Securities Litigation*, No. RDB-17-388 (D. Md. filed Feb. 10, 2017) (the "Securities Action"). The plaintiffs in the Securities Action assert claims under Section 10(b) and 20(a) of the Exchange Act against Under Armour and Plank, as well as claims under Section 20AA of the Exchange Act challenging stock sales by Plank in November 2015 and April 2016. *See generally* Consolidated Third Amended Complaint, *In re Under Armour Sec. Litig.*, No. RDB-17-388 (D. Md. Oct. 14, 2020), ECF No. 153. In sum, the plaintiffs in the Securities Action contend that Under Armour and Plank concealed declining consumer demand for the Company's products between Q3 2015 and Q4 2016 by making false and misleading statements regarding the Company's performance and future prospects and by engaging in undisclosed improper sales and accounting practices, including allegedly "pulling forward" sales to appear healthier. *Id.* The Securities Action remains pending before this Court and is scheduled to proceed to trial on July 15, 2024. *See generally* Order, *In re Under Armour Sec. Litig.*, No. RDB-17-388 (D. Md. Sept. 14, 2023), ECF No. 295.

On November 3, 2019, the Wall Street Journal ("WSJ") published an article alleging that the Securities and Exchange Commission ("SEC") and Department of Justice were investigating Under Armour's accounting practices and examining whether the Company "shifted sales from quarter to quarter . . . [to] appear healthier." (ECF No. 75 ¶ 19.) According to Plaintiffs, the WSJ article "forced the company to issue a statement admitting that it was under investigation and 'began responding in July 2017 to request for documents and information relating primarily to its accounting practices and related disclosures,'" (*id.* ¶ 110), though Under Armour stated that it "continues to believe its accounting practices and related

6

disclosures were appropriate." (*Id.* ¶¶ 280–281.) On November 14, 2019, the WSJ published another article reporting that federal investigators were conducting probes "into the Company's revenue recognition and whether there were improper tactics used to shift sales" in 2015 and 2016. (*Id.* ¶ 111.)

Following the WSJ articles, the Company's Board received an additional demand from Paul, as well as demands from Lowinger, Robison, and Weller. (*Id.* ¶¶ 404, 413, 418, 422.) In response to these demands, which were similar to one another, the Board delegated authority to a committee comprised of Defendants Olson and Bodenheimer (the "Review Committee") to investigate those allegations and make a recommendation to the Board as to how to respond. (*Id.* ¶ 404.) With the assistance of outside counsel—the law firm of Selzer Gurvitch—the Review Committee conducted an investigation, which concluded in November 2020 with the issuance of the Committee Report to the Board. (*Id.* ¶ 405.) In sum, the Review Committee concluded that the claims in the demand letters lacked merit and recommended that the Board decline to pursue those claims. (*Id.* ¶¶ 405, 431.) On November 12, 2020, the majority independent and disinterested Board voted to adopt the Review Committee's findings and recommendations. (*Id.* ¶ 405.) Under Armour notified counsel to Plaintiffs Paul, Lowinger, Robison, and Weller of the Board's determination on November 17, 2020. (*Id.* ¶¶ 405, 417, 421, 427.)

In December 2020, the Board became aware of Plaintiff Viskovich's demand, which raised similar allegations and claims as the demands made by Paul, Lowinger, Robison, and Weller, and referred it to the Review Committee. (*Id.* ¶¶ 410–412.) With the assistance of Selzer Gurvitch, the Review Committee reviewed Viskovich's demand, along with the

7

Committee Report, and the Company's then-pending settlement with the SEC. (*Id.*) The Review Committee reaffirmed the findings in the Committee Report and recommended that the Board decline to pursue those claims. (*Id.*) At a meeting in February 2021, the Board "voted unanimously" to adopt the Review Committee's findings and decline to pursue the claims, subject only to the SEC's final approval of the settlement. (*Id.*) The settlement was approved by the SEC on May 3, 2021, and Under Armour notified counsel to Viskovich of the Board's decision on May 4, 2021. (*Id.*)

As noted above, Under Armour entered into a settlement with the SEC on May 3, 2021. (*Id.* ¶ 333; Ex. A, ECF No. 75 at 179–90.) Without admitting or denying the SEC's claims, Under Armour consented to entry of an order finding violations of Sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933 and Section 13(a) of the Exchange Act, and the Company agreed to pay a civil penalty of $9 million. (*Id.*) The settlement expressly states that the SEC's findings "are not binding on any other person or entity in this or any other proceeding." (*Id.* at 180 n.2.) It is undisputed that the SEC's investigation concluded without enforcement action against Plank or any other Under Armour executive, employee, or director, and the Department of Justice has not brought charges against the Company or any Under Amour executive, employee, or director in connection with the parallel investigation.

### III.   Procedural History

Paul initiated this action on July 23, 2018. (ECF No. 1.) At the consent of the parties, the Court stayed *Paul* pending the resolution of the motion to dismiss in the Securities Action, which was denied on May 18, 2021. *Olin* was filed on September 1, 2020, and *Viskovich* was

filed on November 20, 2020. *Olin v. Plank*, No. RDB-20-2523 (D. Md. filed Sept. 1, 2020), ECF No. 1; *Viskovich v. Under Armour, Inc.*, No. RDB-20-3390 (D. Md. filed Nov. 20, 2020), ECF No. 1. Shortly thereafter, Plaintiffs moved to consolidate *Anderson* and *Viskovich*, while Defendants moved to consolidate all pending related derivative actions. (ECF Nos. 35, 40.) On January 27, 2021, the Court consolidated *Paul*, *Olin*, and *Viskovich*.[6] On February 2, 2023, the Court granted Plaintiffs' Motion to Appoint Lead Counsel and Lead Plaintiff, appointing Plaintiffs Paul and Viskovich as Lead Plaintiffs and their respective counsel as lead counsel. (ECF No. 77.)

On April 24, 2023, Plaintiffs filed Notice of Designation of the Operative Complaint, designating Plaintiffs' Verified First Amended Shareholder Derivative Complaint (ECF No. 75) filed November 21, 2022 as the operative Amended Complaint. (ECF No. 84.) The First Amended Shareholder Derivative Complaint (ECF No. 75) sets forth six claims for relief. Counts I–V are fiduciary claims under Maryland law. (*Id.* ¶¶ 451–480.) In Count VI, the Plaintiffs bring a claim for contribution for violations of Sections 10(b) and 21D of the Exchange Act against Plank. (*Id.* ¶¶ 481–486.) Of import here, the sole basis for federal jurisdiction is based upon Count VI, and the Plaintiffs seek for this Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c)(3) over Counts I–V.

On June 23, 2023, Nominal Defendant Under Armour and Defendants Plank, Adams, Bodenheimer, Coltharp, DeVard, Katz, Krongard, Olson, Sanders, McDermott, Dickerson, Molloy, and Bergman (collectively, "Defendants") filed the instant Motion to Dismiss

---

[6] *Smith v. Plank*, another related stockholder suit, was dismissed by agreement in March 2023. *See* Order, *Smith v. Plank*, No. RDB-20-2589 (D. Md. Mar. 16, 2023), ECF No. 12.

9

Plaintiffs' Verified First Amended Shareholder Derivative Complaint (the "Motion"). (ECF No. 85; ECF No. 86 *SEALED*.) Therein, Defendants argue that Plaintiffs' First Amended Shareholder Derivative Complaint should be dismissed for lack of subject matter jurisdiction. (ECF No. 86 *SEALED* at 16–19.) Plaintiffs opposed the Motion in writing on August 22, 2023. (ECF No. 91; ECF No. 92 *SEALED*.) The Motion is ripe for review.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). In determining whether jurisdiction exists, the district court "is to regard the pleading' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991). The plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence. *Demetres v. E. W. Const., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015); *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999).

## ANALYSIS

With their Motion, Defendants make two arguments for dismissing the First Amended

Shareholder Derivative Complaint (the "Complaint"): (1) the Complaint should be dismissed for lack of subject matter jurisdiction, (ECF No. 86 *SEALED* at 16–19); and (2) the consolidated cases should be dismissed for lack of standing, (*id.* at 19–40). Because this Court finds that Plaintiffs' contribution claim in Count VI against Defendant Kevin Plank is not ripe and therefore dismissal without prejudice is appropriate, it does not reach the parties' standing arguments.

### I. This Court Does Not Have Subject Matter Jurisdiction Over Plaintiffs' Federal Contribution Claim as the Contribution Claim Is Not Ripe.

Defendants argue that the consolidated cases should be dismissed for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1). (ECF No. 86 *SEALED* at 16–19.) Specifically, Defendants argue that Plaintiffs' contribution claim in Count VI against Defendant Kevin Plank—the only claim as to which federal question jurisdiction is asserted—should be dismissed because that claim is not ripe. (*Id.*) In response, Plaintiffs argue that their contribution claim is "sufficiently ripe." (ECF No. 92 *SEALED* at 17–20.) In Count VI, Plaintiffs note that Under Armour is named as a defendant in the related Securities Class Action, and asserts that "[i]f Under Armour is found liable for violating the federal securities laws, the Company's liabilities will arise . . . [due to the] acts or omissions of all or some of the Defendants" such that "[t]he Company is entitled to contribution and indemnification from Plank and/or the other Defendants in connection with all claims that have been, are, or may be asserted against the Company by virtue of their wrongdoing." (ECF No. 75 ¶ 483.) At bottom, this Court agrees with Defendants that Count VI fails for lack of subject matter jurisdiction.

Ripeness "addresses 'the appropriate timing of judicial intervention.'" *Deal v. Mercer City*

*Bd. of Educ.*, 911 F.3d 183, 190 (4th Cir. 2018) (quoting *Cooksey v. Futrell*, 721 F.3d 226, 240 (4th Cir. 2013)). The ripeness doctrine is "drawn from both Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction . . . ." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotation marks omitted). The "ripeness doctrine 'originates in the case or controversy constraint of Article III.'" *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) (citation omitted). Defendants' challenge to the ripeness of Count VI is a facial challenge to subject matter jurisdiction. *Id.*; *see San Sotta v. Town of Nags Head*, 724 F.3d 533, 548 (4th Cir. 2013).

"To be fit for judicial review, a controversy should be presented in a 'clean-cut and concrete form.'" *South Carolina*, 912 F.3d at 730 (quoting *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks and citations omitted). Therefore, when a claimed injury is "'contingent upon the outcome of a separate, pending lawsuit,' courts generally 'dismiss claims as premature.'" *DiBattista v. Greco*, No. 20-590-RGA, 2021 U.S. Dist. LEXIS 17914, at *19 (D. Del. Jan. 31, 2021) (quoting *Pall v. KPMG, LLP*, No. 3:03CV00842(AWT), 2006 U.S. Dist. LEXIS 71821, at *7 (D. Conn. Sept. 29, 2006)); *see also In re Cendant Corp. Derivative Action Litigation*, 96 F. Supp. 2d 394, 397 (D.N.J. 2000) (dismissing contribution claim as not ripe even where Cendant had already set aside the proposed settlement amount because the settlement had not yet received the court's approval); *In re United Telecommunications, Inc., Securities Litigation*, No. 90-2251-EEO, 1993 U.S. Dist. LEXIS 4749, at *3 (D. Kan. Mar. 4, 1993) (dismissing claim as not ripe where the claim was contingent upon the outcome of other

12

litigation); *Lincoln House, Inc. v. Dupre*, 903 F.2d 845, 847 (1st Cir. 1990) (affirming district court's dismissal of claim as not ripe where injury was contingent upon outcome of pending state court litigation); *Plantronics, Inc. v. United States*, No. 88 CIV 1892, 1990 U.S. Dist. LEXIS 54, at *1 (S.D.N.Y. Jan. 9, 1990) (applying New York law, court dismissed action for indemnity where damages were "speculative" until state court action was resolved).

Here, the contribution claim in Count VI is brought pursuant to Section 10(b) of the Exchange Act and Section 21D of the PSLRA. (ECF No. 75 at 159–60.) Section 10(b) of the Exchange Act provides for a "'private right of action for contribution, and Section 21D of the [PLSRA, which] . . . governs the application of any private right for contribution asserted pursuant to the Exchange Act.'" *DiBattista*, 2021 U.S. Dist. LEXIS 17914, at *19 (quoting *Lemon Bay Partners LLP v. Hammonds, C.A.*, No. 05-327 GMS, 2007 U.S. Dist. LEXIS 46143, at *12 (D. Del. June 26, 2007)). Under Section 21D, Plaintiff only has a right to contribution if "final judgment is entered" in the Securities Action against Plank and Under Armour, and if the trier of fact "specifically determines that [those Defendants] knowingly committed a violation of the securities laws."[7] 15 U.S.C. § 78u-4(f)(2)(A). Thus, because Plaintiffs are attempting to bring a contribution claim that is contingent upon a finding of liability in the related Securities Action, the "injury (and availability of a contribution claim) depends upon the results in the related action[], making the contribution claim not ripe." *Pall*, 2006 U.S. Dist. LEXIS 71821, at *11 (concluding that a contribution claim brought pursuant to Section 21D

---

[7] This Court is unpersuaded by Plaintiffs assertion that "[w]hether a settlement would bar contribution claims is speculative at best." (ECF No. 92 *SEALED* at 20 n.9 (citing *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 253 (E.D. Va. 2009).) If there is a settlement in the Securities Action, contribution claims against settling parties would be barred. *Pall*, 2006 U.S. Dist. LEXIS 71821, at *11 (rejecting similar argument as "contrary to Congress' intent as expressed in the plain language of § 78u-4(f)(7)"); *see also DiBattista*, 2021 U.S. Dist. LEXIS 17914, at *21 (same).

13

should be dismissed due to lack of ripeness); *see also DiBattista*, 2021 U.S. Dist. LEXIS 17914, at *19–20 (concluding that a contribution claim brought pursuant to Section 10(b) of the Exchange Act should be dismissed for lack of ripeness); *see also In re Brocade Commc'ns Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1048–49 (N.D. Cal. 2009) (same, where final judgment had not yet been entered in the related case that formed the basis for the contribution claim).

Plaintiffs appear to concede that their contribution claim is contingent on a judgment that has not yet been entered in a separate action. (ECF No. 92 *SEALED* at 17–20.) Plaintiffs nevertheless argue that their contingent contribution claim is "sufficiently ripe," pointing to *In re Tyco International, Ltd.*, No. 03-1343-B, 2004 U.S. Dist. LEXIS 4131 (D.N.H. Mar. 16, 2004). (ECF No. 92 *SEALED* at 18–19.) However, the present case is distinguishable from *Tyco*, where the company asserted direct—i.e., non-derivative—claims for fraud against its former CEO as well as contribution claims with respect to ongoing securities and derivative class actions, in which the company and its former CEO were parties. *In re Tyco Int'l, Ltd.*, 2004 U.S. Dist. LEXIS 4131, at *10–13. The district court permitted the contribution claim to proceed because "the facts underlying [the former CEO's] alleged liability for contribution will be developed in the present litigation and [the company] and [the former CEO] are clearly adverse parties." *Id.* at 13. In the instant matter, the facts concerning Plaintiffs' contribution claim will not be litigated in this action, and Under Armour and Plank are not adverse parties in the Securities Action. Accordingly, the Court dismisses Count VI without prejudice due to lack of subject matter jurisdiction.

## II. This Court Will Exercise its Discretion to Decline Jurisdiction Over Remaining State Law Claims.

Plaintiffs argue that this Court should exercise supplemental jurisdiction over the

14

remaining state law claims (Counts I–V), or in the alternative, its discretion to dismiss the non-diverse Plaintiffs. (ECF No. 92 *SEALED* at 21–23.) With respect to Plaintiffs' argument that this Court should exercise supplemental jurisdiction over the state law claims, 28 U.S.C. § 1367(a) only allows federal courts to entertain claims over which they do not have original jurisdiction where the court has original jurisdiction over at least one claim. "Section 1367(a) is a broad grant of supplemental jurisdiction over other claims within the same case or controversy as long as the action is one in which the district courts would have original jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 558 (2005); *see also* FED. R. CIV. P.§ 1367(c)(3) (providing that the district court "may decline to exercise supplemental jurisdiction" once the court "has dismissed all claims over which it has original jurisdiction"). While Plaintiffs seek to have their state law claims heard in this Court, the requirements for jurisdiction have not been met. As such, this Court declines to exercise supplemental jurisdiction over Counts I–V.

With respect to Plaintiffs' second argument, a court may dismiss a non-diverse party to obtain diversity jurisdiction, pursuant to Federal Rule of Civil Procedure 21, if the court, in its sound discretion, determines that the non-diverse party is not indispensable, pursuant to Rule 19. "However, the matter is committed to the discretion of the trial court, and 'it does not follow as a matter [of] right that a party can be dropped at the mere desire of the plaintiff.'" *Caperton v. Beatrice Pocahontas Coal Co.*, 585 F.2d 683, 692 (4th Cir. 1978) (quoting *Weaver v. Marcus*, 165 F.2d 862, 864 (4th Cir. 1948)). Again, the requirements for jurisdiction have not been met, and this Court declines Plaintiffs' invitation to dismiss the non-diverse Plaintiffs Viskovich, Lowinger, and Weller without prejudice, leaving Plaintiffs Paul and Robison, to

endow this Court with diversity jurisdiction over the remaining state law claims.

## CONCLUSION

For the reasons stated above, the Defendants' Motion to Dismiss (ECF No. 85) is GRANTED, and the Complaint in these consolidated cases is DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

A separate Order follows.


Dated: September 27, 2023

/s/
Richard D. Bennett
United States District Judge